**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA**

v.                                                                                                 **Criminal No. 3:20cr49**

**JOSEPH MARVIN BRYANT,**

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Joseph Marvin Bryant's "Request for Review and Revocation of Detention Order," (the "Appeal"). (ECF No. 28.) The Government filed a response in opposition, (the "Response"), (ECF No. 30), and Bryant replied, (the "Reply"), (ECF No. 31). For the reasons articulated below, the Court will affirm the ruling of Magistrate Judge Roderick C. Young.

## I.  BACKGROUND

On February 21, 2020, as the COVID-19 pandemic began taking hold in the United States, the Government filed a Criminal Complaint against Bryant charging him with aggravated sexual battery based on crossing state lines with the intent to engage in a sexual act with a person who has not attained the age of 12, in violation of 18 U.S.C. § 2241(c). (Criminal Compl. 1, ECF No. 1.) According to the information contained in the Criminal Complaint, an undercover FBI agent, as part of the FBI Richmond Division's Child Exploitation Task Force, created a persona on Alt.com named "Becca." (*Id.* 3.) Becca began conversing online with Bryant. (*Id.*) Becca indicated that she had a ten-year-old daughter who was interested in sexual relations. (*Id.* 4.) The FBI agent then created an account for the ten-year-old daughter, "Sarah." (*Id.* 6.) Bryant engaged in several sexually explicit chats with both Becca and Sarah and later agreed to meet with Becca at a Wegman's parking lot in Midlothian, Virginia. (Id. 5–12.) On February

20, 2020, the day before the Government filed the Criminal Complaint, Bryant drove to the Wegman's parking lot, at which point law enforcement officers took him into custody. (*Id.* 12.)

After receiving the Criminal Complaint, the Court issued an arrest warrant for Bryant, and it was served on him on that same day. (ECF No. 4.) Five days later, on February 26, 2020, Bryant appeared before the Court and waived his right to a detention hearing. (ECF No. 7.) Bryant has remained in custody at Pamunkey Regional Jail since his arrest.

On March 11, 2020, roughly three weeks after Bryant's arrest, the World Health Organization declared COVID-19 a pandemic.[1] *See* WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020, *available at*: https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last accessed Aug. 21, 2020). On March 24, 2020, as a result of the COVID-19 pandemic, Chief United States District Judge Mark S. Davis entered General Order 2020-07, which continued all civil and criminal in-person proceedings in the United States District Court for the Eastern District of Virginia, including sentencings through Friday, May 1, 2020. On April 10, 2020, Chief Judge Davis issued General Order No. 2020-12, which continued all in-court appearances in the Eastern District of Virginia through June 10, 2020.

On March 16, 2020, in between the entry of the two General Orders, the United States filed a motion to extend the time to indict Bryant, which Magistrate Judge Roderick C. Young granted. (ECF No. 10.) On March 27, 2020, the United States filed a second motion to extend

---

[1] The virus has now spread across the United States and has reached certain federal and state prisons. Ned Oliver, *Virginia Prison System Says Active COVID-19 Cases Down to 22*, *Virginia Mercury*, July 13, 2020, *available at* https://www.virginiamercury.com/2020/07/13/virginia-prison-system-says-active-covid-19-cases-down-to-22/.

time to indict, which Magistrate Judge Young granted over Bryant's objection. (ECF Nos. 11, 13, 15.)

On May 27, 2020, a grand jury returned a single count indictment against Bryant, charging him with aggravated sexual battery based on crossing state lines with the intent to engage in a sexual act with a person who has not attained the age of 12, in violation of 18 U.S.C. § 2241(c), the same offense identified in the Criminal Complaint. (*See* Indictment, ECF No. 16.) On June 4, 2020, Bryant appeared before the Court through video teleconference for his arraignment. (ECF No. 19.) At the arraignment, the Court set a jury trial to begin on August 3, 2020. (*Id.*)

On July 13, 2020, roughly one month later, the Government filed a motion to continue the jury trial for 60 days "to ensure completion of . . . cell phone forensics." (Mot. Continue Jury Trial 2, ECF No. 22.) In that motion, the Government averred that "counsel for defense . . . does not object to this motion." (*Id.* 2.) The Court continued the jury trial and ordered the Parties, no later than September 15, 2020, to "file a joint status report regarding the rescheduling of the jury trial." (July 16, 2020 Mem. Order 7, ECF No. 23.)

On July 29, 2020, Bryant filed a motion to revoke detention order and set conditions of release. (Mot. Revoke Detention, ECF No. 24.) In that motion, Bryant asserted that he "has been held at the Pamunkey Regional Jail while this matter has been pending [and he] is a sixty-one-year-old man with no prior criminal history. (*Id.* 1.) Bryant stated he suffered from diabetes and could be released to his ninety-three-year-old mother in Dade City, Florida. (*Id.* 2).

On August 3, 2020, Magistrate Judge Young held a hearing on the motion to revoke detention. (ECF No. 26.) Judge Young heard testimony from Thelma Bryant, Joseph Bryant's mother, and FBI Agent Matthew Marasco. Thelma Bryant testified that she would be willing to

serve as her son's custodian, that Joseph could live with her in her home in Dade City, Florida, and that she would call the probation office and report Joseph if he violated any conditions of his release. (Aug. 3, 2020 Tr. 5–6, ECF No. 29.) On cross-examination, Thelma Bryant informed the Court that another son, Homer, lived with her in Florida, that Homer owned a cell phone, and that Homer kept a laptop computer in her home. (*Id.* 7–8.)

FBI Agent Marasco then testified about Joseph Bryant's February 20, 2020 arrest in the Wegman's parking lot. (*Id.* 12–13.) The Government asked whether Bryant, upon his arrest, confirmed that "he was engaging in [a] chat with [an] undercover [agent] posing as [a] 10-year old?" (*Id.* 14.) Agent Marasco answered "yes." (*Id.*) The Government further asked whether "the undercover [agent] who was posing as the 10-year old always represented themselves to be 10 years old," and Agent Marasco answered "yes." (*Id.*)

The Government then argued that, "in agreement with pretrial," that they did not recommend releasing Bryant. (*Id.* 15.) The Government asserted that Bryant "traveled . . . to Virginia from Bethesda, Maryland, with the intent to meet an underage girl for sex." (*Id.*) The Government then recited some of the statements that Bryant made "[w]hen he was speaking with the undercover [agent] who was posing as the mother of this young girl," including:

- He asked if the little girl's hymen was still intact.
- Does "She like having her pussy eaten?"
- She says -- he said that he would like the mother to position his cock at her cunt, especially for the first time. Make it clear that it is her responsibility to take it.
- He said to the undercover, posing as the mother, that "I picture either, fucking her mouth with you rimming me," pulling – "her pulling my ass cheeks apart to give you better access and you gripping her hair."
- He explained that he would punish the undercover posing as the mother and

- the 10-year old with "Belt, paddle, canes, crops, floggers, corner time, or many many other ways."
- When chatting with the 10-year old, he discussed the fact that she was a virgin. And he said that you won't – "You won't be when I get my hands on you. I will take all your holes."

. . .

- "I want it to hurt you when I do. And you'll love it."
- He said, "You know the first time I take you will hurt a lot, and I will make it hurt all I can."
- "I will be ripping your hymen."
- He said, "I can't wait to shove it up your tight little ass."

(*Id.* 16–17.)

The Government summated that Bryant should remain detained because

[B]ased on those chats, and the fact that [Bryant] actually did go the extra step of traveling here to Virginia, it's clear that he was intent on not only sexually's [sic] abusing this 10-year old girl, he also wanted to cause her great pain. Describing those sex acts, he wanted to engage in and punishments that he would administer, and he seemed to find joy in the thought of causing a 10-year old girl pain.

. . .

As far as his mother serving as his custodian, the government does not agree that she would be an appropriate custodian in this case, or that it would be appropriate for him to travel to Florida. Given the state of Covid right now being so widespread, it just doesn't seem practical to have him travel to someplace where it -- where Covid is so widespread.

And the fact that his mother's house has Internet access and electronics, and the crux of this crime was him communicating with an underage child – or what he believed to be an underage child on-line, I don't believe that that would be appropriate, and ask the Court to detain him.

(*Id.* 17–18.)

In response, Counsel for Bryant argued that Bryant did not present a flight risk because he "is 61-years old. He has no prior criminal record[, and h]e has been gainfully employed his entire

adult life." (*Id.* 19.) Counsel further argued that "Bryant made clear at the time that he was arrested in this post-arrest statement that he had absolutely no desire to have sexual acts with a child. And that what he believed he was engaging in was a sexual fantasy role-play where an adult woman plays the role of both an adult woman and a child." (*Id.*)

Magistrate Judge Young ordered Bryant detained. (*Id.* 23.) In doing so, Judge Young explained that a presumption exists in this case "because this is an offense involving minor victims." (*Id.*) Judge Young further stated that he "considered the evidence of [Bryant's] mother who testified, and also the evidence that's located not only in the pretrial services report that was originally filed but also the addendum, and I find that the presumption in this case has not been rebutted." (*Id.*) Judge Young specified that while he did not consider Bryant a flight risk, Bryant did not overcome the presumption on danger based upon the nature of the offense. (*Id.* 24.)

Bryant now appeals the detention order. In his Appeal, Bryant explains that he "believed that . . . he was chatting with an adult female who would assume a child persona in order to escalate the sexual fantasy." (Appeal 4, ECF No. 28.) "While the chats are explicit and disturbing, it was all fantasy, nothing that Mr. Bryant was going to act upon." (*Id.* 5.) Bryant further contends that he "drove to Richmond to meet 'Becca,' the adult female. The chat preceding this meeting make clear that the 10 year old would not be present at this meeting." (*Id.*) Bryant also raises concerns about the ongoing COVID-19 pandemic as another factor supporting his release. (*Id.*) Bryant contends that he "is an insulin dependent diabetic putting him in a high risk category for sever[e] illness or death if he contracts the coronavirus." (*Id.* 8.) Bryant recognizes that "there are no confirmed cases of COVID-19 at the Pamunkey Regional Jail, [but] there is no information available as to whether or not inmates at this facility are being tested." (*Id.*)

In response, the Government argues that Bryant presents a danger to the community and represents a flight risk given the thirty-year prison term he faces if convicted. (Resp. 1–2, ECF No. 30.) The Government claims Bryant's "lack of connection with the community is further evidenced by his request to be released to live in Florida, rather than somewhere local." (*Id.* 3.) The Government contends that the evidence in this case is strong and that Bryant should not be released because he poses a danger to the community, particularly because prior to his arrest he worked as a "designer of high end computer systems." (*Id.* 3–4.) The Government believes Bryant's "above-average knowledge in the area of technology and computers would likely render any attempts to control or monitor his internet activity useless." (*Id.* 4.)

## II. LEGAL STANDARDS

Ordinarily, a defendant should not be detained pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). The Bail Reform Act, 18 U.S.C. §§ 3141–56, governs the release or detention of a defendant pending trial, including appeals of detention orders.

"When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart,* 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Rueben,* 974 F.2d 580, 585–86 (5th Cir. 1992)). Bryant, as a pretrial detainee, appeals the pretrial detention order pursuant to 18 U.S.C. § 3145(b). That provision provides,

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over

the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

*Id.*

Courts may impose pretrial detention if the court lacks "reasonable assurance of either the defendant's appearance or the safety of others or the community." *Stewart*, 19 F. App'x at 48. "With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *Id.* (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Regarding community safety, "[t]he Bail Reform Act requires that 'clear and convincing evidence' support the district court conclusion that no conditions other than detention will reasonably assure the safety of any other person and the community." *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (quoting 18 U.S.C. § 3142(f)(2)). Thus, the test is disjunctive; a finding on either ground compels the defendant's detention. *See Salerno*, 481 U.S. at 754–55. But, the burden of proof differs: the Government must establish by a preponderance of the evidence that a defendant is a flight risk, whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See Stewart*, 19 F. App'x at 48.

To determine "whether defendant poses an unreasonable risk of flight or danger to another person," the Court must consider the factors set forth in 18 U.S.C. § 3142(g). Those factors include:

(1)     the nature and circumstances of the offense charged . . . ;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person . . . ; [and]

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*United States v. Mallory*, 268 F. Supp. 3d 854, 862 (E.D. Va. 2017) (citing 18 U.S.C. § 3142(g)); *see also United States v. Maitland*, No. 4:20-CR-24, 2020 WL 1929133, at *1 (E.D. Va. Apr. 21, 2020) ("In evaluating whether a defendant should be released on bond, a district court must consider the" § 3142(g) factors.)

The Court has discretion over whether to hold an evidentiary hearing in review of a magistrate judge's detention order.[2] *See United States v. Williams*, 753 F.2d 329, 333–34 (4th Cir. 1985); *see also United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (recognizing "there is no statutory requirement [under the Bail Reform Act] that the court hold a hearing" and the court "retains the discretion to decide whether to hold a hearing").

### III. ANALYSIS

Having considered the relevant factors, the Court finds that no condition or combination of conditions of release would reasonable assure the safety of the community pending trial. Furthermore, the current COVID-19 pandemic does not warrant Bryant's release.

The Court first affirms that a rebuttable presumption exists in favor of detention because the grand jury returned an indictment charging Bryant with violating 18 U.S.C. §2241.[3] *United States*

---

[2] Although the Reply mentions "evidence to be adduced at the hearing," (Reply 3, ECF No. 31), Counsel for Bryant did not formally request a hearing. In any event, the Court has reviewed the record and does not find a hearing necessary to resolve the instant appeal.

[3] The rebuttable presumption is set forth in 18 U.S.C. § 3142(e). That statute provides

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to

v. *Stone*, 608 F.3d 939, 945 (6th Cir. 2020) ("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged.") Although the Court recognizes that this presumption is rebuttable, the Court finds that, after reviewing his appeal *de novo*, Bryant has not overcome the presumption in favor of detention.

Here, the first two Section 3142(g) factors weigh in favor of detention. Regarding the first factor, the nature and circumstances of Bryant's offense are serious. The crime charged involves Bryant's attempt to engage in a sexual relationship with an individual he believed was a ten-year-old child. Although Bryant claims that he was merely living out a fantasy and that he did not intend to have sex with the minor, the current record, including Bryant's graphic messages and actions, suggest otherwise.

Regarding the second factor, the record reflects that the weight of the evidence against Bryant is strong. The record before the Court indicates that Bryant arranged a meeting with the minor's mother and appeared at a specific time and place to act on his desires, after engaging in many explicit conversations that included details about sexual and physical acts that he hoped to perform on the minor.

As to the third factor, the Court does not find that Bryant's history and characteristics weigh in favor of detention. Bryant has no criminal history, but he may have the financial resources to flee given his employment history and the lengthy sentence he faces if convicted. The Court acknowledges that Bryant's mother testified on his behalf and agreed to serve as his custodian, but

---

believe that the person committed . . . an offense involving a minor victim under section . . . 2241 . . . of this title.

18 U.S.C. § 3142(e).

the Court has concerns about sending Bryant to live with his ninety-three-year-old mother in Florida during a pandemic. The current access to computers in her home raises concerns. The Court finds that this factor weighs neither for or against detention.

Lastly, clear and convincing evidence shows that Bryant poses a danger to the community. As noted, the evidence shows that Bryant believed he was communicating with a ten-year-old girl about sex and arranged to meet with her mother to pursue those actions. His graphic messages articulating a desire to harm the girl and her mother suggest dangerousness. Bryant went to a specified location to meet with the girl's mother. The Court cannot overlook this serious criminal conduct. While the Court is not unsympathetic to Bryant's medical status, the record reflects that there are no reported COVID-19 cases at the Pamunkey Regional Jail. After considering the evidence, including the pretrial services report and testimony before Magistrate Judge Young, and weighing the factors in § 3142(g), the Court finds that Bryant's release presents a serious risk of danger to others in the community. As a result, the Court will affirm the decision to keep Bryant detained.

## IV. CONCLUSION

For the foregoing reasons, the Court will affirm the Magistrate Judge's decision to order Bryant detained pending trial.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: August 31, 2020
Richmond, Virginia